## City of Chicago v. Robert W. Hunt et al.

### Gen. No. 12,775.

1. CONTRACT—*what not void, as against public policy.* A contract with an architect by which the compensation of such architect is fixed at a percentage upon the contract price paid by the purchaser, is not void as against public policy, even though the amount of such compensation may be indirectly increased by virtue of the report of such architect by reason of which such contract price is increased.

2. CONTRACT—*what constitutes "contract price."* A contract which provides for the payment of a certain sum for an engine to be furnished and for the payment of a greater sum by way of reward if such engine exceeds a certain efficiency, and for a lesser sum if it does not equal such efficiency, does not establish a fixed or certain contract price, but the contract price under such a contract is the amount actually paid for the engine when its efficiency has been determined.

Action in *assumpsit*. Appeal from the Superior Court of Cook county; the Hon. JESSE HOLDOM, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1905. Affirmed. Opinion filed December 11, 1906.

**Statement by the Court.** Henry R. Worthington made a written agreement with the City of Chicago

to furnish and install six pumping engines. Hunt & Co. made a written agreement with the city to superintend the erection and make tests of the efficiency of said engines, for which services the agreement provided they should receive from the city "two per cent. on the contract price." The agreement between Worthington and the city provided "that the duty required to be developed by each engine shall not be less than 135 million pounds of water raised one foot high for each 1,000 pounds of commercially dry steam. * * * In case any of the engines exceed the duty above prescribed, then the City of Chicago agrees to pay to the contractors as a reward for the superior efficiency of the engine the sum of $1,000 for each million foot pounds excess of pro rata for any fraction thereof for each engine. In case either engine fails to perform the duty of 135 million foot pounds per 1,000 pounds of commercially dry steam during the duty test, the contractors shall pay to the City of Chicago, as an agreed measure of damages for lack of efficiency of the engine, in the ratio of $2,000 for each one million foot pounds which the duty falls below 135 million. A failure in capacity or duty exceeding three per cent. of the requirements of the contract and specifications will subject the machinery to rejection by the commissioner of public works, or to such forfeiture as said commissioner in his discretion may determine."

Said agreement further provided that the city should pay Worthington thereof $437,600. When the final tests were made, it was found that said engines developed a duty beyond that required and specified as a minimum, and that in addition to the sum of $437,600, mentioned in the agreement, Worthington was entitled, under the clause in the agreement above set forth, to receive, "as a reward for the superior efficiency of the engine," $90,000, and the city paid Worthington both the $437,600 and the

$90,000. The city paid Hunt & Co. two per cent. on the $437,600, but refused to pay it upon the $90,000. Hunt & Co. brought suit and recovered a judgment of $1,800, from which the city prosecutes this appeal.

LEON HORNSTEIN and JOHN W. BECKWITH, for appellant; JAMES HAMILTON LEWIS, of counsel.

GOODRICH, VINCENT & BRADLEY, for appellees; WARREN NICHOLS, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

The case was submitted to the court upon an agreed statement of facts and the only question presented is, what, as between Hunt & Co. and the city, was the "contract price" of the six engines under the contract between the city and Worthington? The contract price fixed by the contract was based upon the sum of $437,600 for the engines in case they developed a duty of 135 million foot pounds for each 1,000 pounds of commercially dry steam during the final tests. But $437,600 was not the amount the city agreed to pay and Worthington agreed to receive for said engines. The city agreed, if any engine exceeded the prescribed duty, to pay Worthington, "as a reward for the superior efficiency of the engine," $1,000 for each million foot pounds of excess, and Worthington agreed to pay the city, in case any engine failed to perform the required duty, $2,000 for each million foot pounds which the duty fell below 135 million, "as an agreed measure of damages for lack of efficiency."

The contract further provided that in case of a failure of duty exceeding three per cent. of the requirements of the contract, the engine might be rejected.

The foregoing provisions in relation to excess and to lack of efficiency appear to precede, in the written instrument, the agreement to pay $437,600 for the engine.

The intention of the parties is to be gathered from

City of Chicago v. Hunt.

the whole instrument and regard is had to the substance rather than the form of its provisions. Although the amount the city was to pay in case of excess of duty was called "a reward for the superior efficiency of the engine," yet that provision, taken with the other provisions of the instrument, makes a contract that, in case of excess of duty, the price of the engines should be $437,600 and $1,000 for each million foot pounds excess. So the provision that in case any engine failed to perform the duty of 135 million foot pounds per 1,000 pounds of steam, Worthington should pay the city, "as an agreed measure of damages for lack of efficiency," $2,000 for each million foot pounds which the engine fell below said duty, taken with the other provisions of the contract, makes a contract that in case of failure of duty not exceeding three per cent., the price of the engines should be $437,600 less $2,000 for every million foot pounds which an engine fell below its required duty.

The words "contract price" in the written agreement between Hunt & Co. and the city, refer to and mean the contract price of the engines as fixed by the entire written agreement between Worthington and the city, and not to the sum of $437,600 mentioned in said instrument as the price of said engines in case their duty came up to but did not exceed the duty therein specified and required.

The provisions in the agreement between Worthington and the city, relating to the decrease of the contract price, was equally binding upon Hunt & Co. as those relating to the increase, and the contract between Hunt & Co. and the city is not therefore void for want of mutuality.

Hunt & Co., under their contract with the city made the final test of the engines. Upon their report Worthington's compensation was increased $90,000, and upon this increase their claim for the compensation here sued for is based.

It is contended that a contract enabling Hunt & Co. to increase their compensation from the city by, through their own report, increasing Worthington's compensation, is void as against public policy. This contention is without merit. Architects are usually paid a certain percentage of the cost of the building. It is very common for contractors to erect large buildings on a percentage, the owner paying all bills, and a certain per cent. of the cost to the contractor for his compensation, and it has never been suggested that such a contractor, or an architect's contract for a percentage compensation, was against public policy.

The judgment of the Superior Court will be affirmed.

*Affirmed.*